IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


K.C.,

                    Plaintiff,

vs.                                          Case No. 20-1144-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

                    Defendant.


**<u>MEMORANDUM AND ORDER</u>**

    This is an action appealing the denial of Social Security
disability benefits.  Plaintiff filed her application for benefits
on March 12, 2018, alleging that she has been disabled since March
6, 2018.  The administrative law judge (ALJ) conducted a hearing
on November 6, 2019, considered the evidence, and decided on
November 26, 2019 that plaintiff was not qualified to receive
benefits.  This decision has been adopted by defendant.  This case
is now before the court upon plaintiff's request to reverse and
remand the decision to deny plaintiff's application for benefits.

I. <u>Standards of review</u>

    To qualify for disability benefits, a claimant must establish
that he or she was "disabled" under the Social Security Act, 42
U.S.C. § 423(a)(1)(E), during the time when the claimant had
"insured status" under the Social Security program.  See <u>Potter v.</u>

1

Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may

not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 18-36).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 19-20). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2019.  Second, plaintiff has not engaged in substantial gainful activity since March 6, 2018.  Third, plaintiff has the following severe impairments: obesity; lumbar degenerative joint disease; sacroiliitis; bilateral shoulder bursitis; type I diabetes mellitus; headaches; anxiety; and depression.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that: standing and walking are limited to two hours in an eight-hour day and no more than 15 minutes at a time; sitting is limited to six hours in an eight-hour day and two hours at any time; plaintiff requires

the ability to shift from side-to-side at will; lifting is limited to five pounds frequently and ten pounds occasionally; reaching is limited to frequent; reaching above the shoulder bilaterally is limited to occasional; bending, twisting, turning, stooping, and squatting can be performed up to 15 percent of the workday; plaintiff cannot power grip with her upper extremities bilaterally; plaintiff cannot push or pull levers with her upper extremities; she cannot operate foot controls; she cannot climb ropes, ladders or scaffolds; plaintiff cannot climb ramps or stairs more than 15% of the workday; she cannot work in extreme heat or cold; she cannot work outdoors or under hazardous conditions or at unprotected heights; plaintiff cannot work around moving machinery; she is limited to simple routine, and repetitive tasks and simple decision-making with no interaction with the public; and she cannot have more than occasional interaction with co-workers and supervisors.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could not perform her past relevant work as a radiological technician, a hospital admitting clerk, or receptionist under the RFC described in the ALJ's decision. She, however, could work as a document preparer, a touch up screener, or a table worker.

III. The decision to deny plaintiff's application for benefits shall be affirmed.

   A. The ALJ's mental RFC determination is adequately supported in the record.

   Plaintiff alleges that the denial of benefits should be reversed and remanded because the ALJ's determination of plaintiff's mental health impairments was not supported by substantial evidence in the form of medical opinions. Doc. No. 16, p. 15.

   There are two mental health professionals who completed Psychiatric Review Technique forms regarding plaintiff. Neither consultant examined plaintiff. One, Dr. James Morgan, concluded after his review in May 2018 that plaintiff had a mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting or maintaining pace; and no limitation in adapting or managing herself. (Tr. 114). The other, Dr. Richard Kaspar, concurred with Dr. Morgan's findings, after his review in December 2018. (Tr. 131).

   The ALJ found that the assessments of these two men were supported by summaries of the records available at the time of the reviews and were consistent with each other. (Tr. 26). He also found, however, that the assessments were inconsistent with an observation that plaintiff "had poor attention at the beginning of treatment . . . and with the [plaintiff's] well[-]documented mood

disturbances, which could reasonably impact her cognitive and social functioning." (Tr. 26-27). Therefore, the ALJ found that plaintiff had: no more than a moderate limitation in understanding remembering or applying information; only moderate limitations in interacting with others; no more than moderate limitations in concentrating, persisting or maintaining pace; and only mild limitations in adapting or managing herself. Id.

The ALJ also found that the mental restrictions in the RFC were supported by the symptoms linked to plaintiff's depression, anxiety and excoriation (skin picking) disorder. (Tr. 32). He determined that plaintiff's statements regarding the intensity, persistence or limiting effects of those symptoms were inconsistent with plaintiff's course of treatment, mental status examinations, and reports of her daily functioning. Id. The ALJ noted that plaintiff's mental health care treatment has consisted of oral medications and psychotherapy, and that her primary care provider reported in May 2019 that plaintiff's mental health conditions were stable. Id. He considered this inconsistent with the presence of debilitating mental illness.

The ALJ reviewed findings that he said showed that plaintiff did not need reminders to complete personal care or medication tasks, and that plaintiff had an organized or linear thought process, an intact memory, and adequate attention and concentration. (Tr. 33). He found that plaintiff's ordinary

shopping actions and financial tasks demonstrated an ability to complete work limited to simple, routine, and repetitive tasks. Id.  The ALJ also found that plaintiff had no problems getting along with family, friends or authority figures and that she displayed a normal mood and affect at times, but anxious and tearful at other times.  Id.  He attempted to tailor the RFC to accommodate this evidence regarding plaintiff's social functioning.

To buttress her argument that substantial evidence does not support the mental RFC determination, plaintiff cites 42 U.S.C. § 421(h).  This provides that there will not be a disability determination unless the Commissioner has made "every reasonable effort" to ensure that "a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable RFC assessment" where there is "evidence which indicates the existence of a mental impairment."  Here, the Commissioner included reviews of the record from Dr. Morgan and Dr. Kaspar.  Plaintiff, who was represented by counsel at the hearing before the ALJ, did not ask for an additional evaluation to account for any evidence or developments which occurred after Dr. Morgan and Dr. Kaspar's review.[1]  Thus, it appears that there has been compliance with § 421.

---

[1] In Cowan v. Astrue, 552 F.3d 1182, 1188 (10th Cir. 2008), the court held that normally an ALJ should be able to rely upon claimant's counsel to identify issues requiring further development.

Plaintiff also cites <u>Andrade v. Secretary of Health and Human Services</u>, 985 F.2d 1045 (10th Cir. 1993), <u>Birnell v. Apfel</u>, 45 F.Supp.2d 826 (D.Kan. 1999), and <u>Branstetter v. Colvin</u>, 2014 WL 3700976 (D.Kan. 7/25/2014), arguing that these cases support reversing the denial of benefits. The court finds these cases distinguishable.

In <u>Andrade</u>, there was no mention of a mental impairment until about one month before the ALJ hearing, when the claimant filed forms which referred to psychochemotherapeutic treatment. At the ALJ hearing, the claimant testified to severe depression and his treatment program. The ALJ completed a document which included an RFC assessment without the assistance of a medical consultant. The ALJ concluded there was no reference in the record to the claimant's inability to perform work because of a mental impairment. The Tenth Circuit disagreed and held that substantial evidence did not support this finding or an ALJ finding that the claimant's mental problems were largely situational in nature. 985 F.2d at 1050. Therefore, the court remanded the case for further consideration of the claimant's mental impairment possibly to obtain the assistance of a mental health professional.

In <u>Birnell</u>, there was a PRT form completed by a mental health professional before the hearing level. But, after the form was completed, additional medical records were submitted which were significant. The additional evidence contained evidence regarding

9

the claimant's pursuit of treatment and different mental illness diagnoses.  In spite of the additional records and the different diagnoses, at the hearing level the ALJ completed a PRT analysis without further consultation with medical experts.  The court held that it was an abuse of discretion for the ALJ to elect not to pursue a consultative examination to consider plaintiff's impairment in light of the additional information.  45 F.Supp.2d at 836-37.  The court also held that it was error for the ALJ to complete the PRT form when there was significant new evidence regarding mental impairments for which an expert's evaluation would be useful.  Id. at 837.

In Branstetter, the only qualified psychologist to submit an RFC assessment for the ALJ's consideration admitted that the opinion was based on insufficient evidence.  2014 WL 3700976 at *5.

The record in this case indicates that plaintiff has had a long history of depression and anxiety issues.  E.g., Tr. 682, 685, 707, 768.  Unlike Andrade and Birnell, this is not a situation where a diagnosis has changed or been added.  Nor is this a situation where new evidence of an inability to work has been presented from a medical expert.  Unlike Branstetter, the psychologists who have reviewed the record have not stated that there is insufficient evidence upon which to base an opinion. Here, the ALJ had the assistance of mental health professionals

10

(unlike Andrade) and his conclusions are supported by substantial evidence. Therefore, the court holds that the ALJ did not abuse his discretion in failing to seek additional expert opinion or to order a consultative examination before completing his mental residual functional capacity findings.

The court acknowledges that the ALJ's RFC does not coincide with the opinion of a medical expert. But, this is not required. The ALJ is expected to weigh the medical evidence and resolve conflicts in the evidence to determine the RFC. See 20 C.F.R. § 404.1546(c). It is the ALJ's responsibility, not a physician's, to assess the RFC from the medical record. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). In Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012), the court rejected the argument "that the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion." The court stated: "There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Id. "[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." Id. The Tenth Circuit reiterated this position recently in Guillar v. Commissioner, SSA, 2021 WL 282274 *3 (10th Cir 1/28/2021)(affirming

decision to deny benefits which gave partial credit to two physicians' opinions and found middle ground between them).

In this case, the ALJ found greater mental functioning restrictions than those found by the state agency consultants. The restrictions he found are supported by the reasoning and evidence cited in his decision. Therefore, we find that the ALJ performed his job reasonably in this case and reject plaintiff's first argument to reverse the denial of benefits.

B. The ALJ gave sufficient reasons to reject plaintiff's testimony as to her need to take naps.

Plaintiff contends that the ALJ did not properly consider evidence that she must take daily naps. There are frequent references in the medical records to fatigue, but not many references to daily naps. A record from August 4, 2018 states that plaintiff has "daytime sleepiness." (Tr. 601). A record generated on March 5, 2019 noted that a nap was needed "even now with cpap."[2] (Tr. 648). On August 30, 2019, plaintiff reported that she tries to take a nap when she can due to exhaustion. (Tr. 694). Another record from September 24, 2019 indicates that plaintiff takes daily naps for 30 minutes (Tr. 758), and that she denied a "decrease[d] ability to focus or concentrate while working or performing daily activities due to sleepiness." (Tr. 757). It also indicates that plaintiff was advised to avoid napping. (Tr.

_____

[2] The same record states that during the visit plaintiff denied fatigue.

12

759).  Plaintiff stated that prior to stopping work, in 2016, she slept for long periods of time when she was not at work.  (Tr. 368, 383).

Plaintiff testified before the ALJ in November 2019 that she has fatigue "partially because of obstructive sleep apnea."  (Tr. 65).  She said she uses a CPAP machine and sleeps "pretty well" with it.  (Tr. 66).  Plaintiff further testified that she has diabetes, depression and anxiety which play a role in her fatigue, and that pain and medication could also contribute.  (Tr. 66-67).  She said that she needed to recline to mitigate pain.  (Tr. 61).  When asked to describe a typical day, plaintiff said that she takes a nap in the late morning for two hours, unless she has an appointment, like a doctor's appointment, and that in the late afternoon she will take an hour nap, sometimes more.  (Tr. 70).  Plaintiff listed no other activities other than making quick and easy meals, taking pills, watching TV, and being on Facebook or the phone.  This was not her typical day a few months before when she took care of two or three young grandchildren who were difficult.  That was hard both on her and her husband.  Plaintiff testified that she was the primary caregiver.  She said she and her husband had to give the grandchildren back to their mother because it was too stressful.  (Tr. 71-72).

On September 10, 2019, Dr. Huerter, who treated plaintiff's diabetes, signed a form created by plaintiff's counsel which

13

described plaintiff's reports of "debilitating levels of fatigue" that require her to take at least one 2-hour nap each day or three such naps on a "bad" day.  After this statement, the form asks: "Is [plaintiff's] fatigue an expected symptom given her diagnoses of depression, fibromyalgia, and diabetes?"  Dr. Huerter circled "yes."  (Tr. 712).  There was no explanation or elaboration of his answer.

On September 19, 2019, Grace Keltner, a nurse practitioner, was given a form, also created by plaintiff's counsel, which stated in part that plaintiff reported she can sit for 3 hours, stand and walk for one hour, recline for 2 hours and never stoop during an 8-hour day.  The form then added that "she must take at least one 2-hour nap each day."  The form asked Keltner whether this was "consistent with what you would expect given her diagnosis and clinical situation?"  Keltner circled "yes," remarking that she last evaluated plaintiff eight months before she signed the form, and directing the reader to look at the "visit notes."  (Tr. 756).  The notes from plaintiff's visit with Keltner on October 4, 2018, indicate that plaintiff did not have a "sleep disturbance" and that plaintiff was "alert."  (Tr. 640-41).  The notes from plaintiff's visit with Keltner on January 31, 2019 show that plaintiff admitted sleep disturbance and fatigue, but that she was alert.  (Tr. 637-38).  Keltner's main focus in treating plaintiff was plaintiff's complaints of pain.

14

The ALJ explicitly found that plaintiff did not "have a medical need to take a nap of one to two hours per day." (Tr. 21). In support of this finding, the ALJ noted: that on September 24, 2019, plaintiff told Dr. Alkazir, who treated plaintiff's sleep apnea that she napped for 30 minutes daily (Tr. 21, citing Tr. 758); that she slept well with the CPAP machine; and that she denied a decrease in the "ability to focus or concentrate while working or performing daily activities due to sleepiness." (Tr. 21 quoting Tr. 757).

The ALJ found Dr. Huerter's opinion unpersuasive because it was vague and lacked a narrative explanation. (Tr. 32). The ALJ found Ms. Keltner's opinion unpersuasive because it lacked support and was written several months after Keltner's lack evaluation of plaintiff. Id.

Plaintiff argues that the ALJ's decision is based upon a mischaracterization of plaintiff's testimony. More specifically, plaintiff contends that the ALJ discounted the evidence regarding naps on the basis that plaintiff's sleep apnea was controlled effectively, even though plaintiff linked her "fatigue" to sleep apnea and other conditions.

The court does not find that the ALJ substantially mischaracterized plaintiff's testimony. Sleep apnea was the first cause of fatigue mentioned in plaintiff's testimony. (Tr. 65). The ALJ discussed the plaintiff's alleged need for a nap in a

paragraph which addressed plaintiff's sleep apnea and the functional limitations caused by sleep apnea. (Tr. 21). The ALJ did not state that sleep apnea was the only cause of plaintiff's fatigue. The ALJ <u>did</u> state, as already noted, that plaintiff's testimony was contradicted by the record from Dr. Alkazir. While plaintiff in her testimony mentioned other possible causes for her fatigue, the ALJ did not ignore plaintiff's other conditions in his opinion. He discussed the functional limitations from plaintiff's other medical conditions elsewhere in his decision. This discussion included his dismissal of the rather terse and/or vaguely-presented opinions from Dr. Huerter and Ms. Keltner as lacking support and explanation.

Plaintiff also argues that the ALJ should not have dismissed Dr. Huerter's opinion. The court agrees with the ALJ, however, that Dr. Huerter's statement that "fatigue" is an expected symptom given plaintiff's diagnoses does not come close to supporting a functional limitation more restrictive than the RFC in this case. It simply does not address the intensity, persistence and limiting effects of plaintiff's fatigue. The ALJ may give conclusory forms, such as those returned by Dr. Huerter and Grace Keltner little weight. See <u>Terwilliger v. Commissioner, Social Security Administration</u>, 801 Fed.Appx. 614, 622-23 (10th Cir. 2020).

Finally, plaintiff contends that the sedentary work restrictions that are a part of the RFC do not sufficiently

accommodate plaintiff's fatigue.  This argument, however, assumes that plaintiff requires lengthy naps every day.  The ALJ did not give credit to this claim.

In summary, plaintiff testified that on a typical day, unless she has an appointment, she takes a nap in the morning and a nap in the afternoon.  The ALJ found that those naps were not medically necessary.  He supported this conclusion by referencing inconsistent notations in the medical record and by referring to success sleeping plaintiff had with her CPAP machine.  He also analyzed plaintiff's functional limitations from other conditions which cause fatigue, like diabetes, and developed an RFC which he considered consistent with the evidence of the intensity, persistence and limiting effects of plaintiff's symptoms.  The RFC did not account for a nap requirement because the ALJ found that such a requirement was not supported in the record, in spite of the plaintiff's testimony and the opinions of Huerter and Keltner. It is the ALJ's duty to resolve conflicts in the evidence and to assess the plaintiff's allegations of her symptoms.  See Richardson v. Perales, 402 U.S. 389, 399 (1971); Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013).  A review for substantial evidence is not a permission slip to "reweigh the evidence or retry the case." Wall, 561 F.3d at 1052.  The ALJ's assessment of a claimant's subjective complaints of pain or fatigue will not be overturned when it is supported by substantial evidence, which as

the court has already stated is more than a scintilla but not
necessarily a preponderance.    There is substantial evidence to
support the ALJ's finding on the necessity for naps.

   C. Substantial evidence supports the ALJ's assessment of
plaintiff's reaching and handling limitations.

   The ALJ concluded that plaintiff's RFC should be limited to
frequent reaching and occasional reaching above the shoulder
bilaterally.  (Tr. 27).  This is similar to plaintiff's counsel's
argument before the ALJ that:    "Bilateral bursitis limits
[plaintiff's] reaching overhead or behind her to occasionally."
(Tr. 55).  Nevertheless, plaintiff contends that the ALJ did not
correctly evaluate the impact of plaintiff's shoulder limitations
upon her RFC because he improperly considered plaintiff's recent
lack of treatment and because he failed to give a good reason to
reject the reaching and handling limitations given by a state
agency consultant.

   Regarding the lack of treatment, in his discussion of the
evidence, the ALJ noted that plaintiff was diagnosed with
subacromial bursitis in August 2018 and in October 2018 after which
physical therapy was recommended.  (Tr. 29-30).  The ALJ remarked
that plaintiff's physical examinations typically showed a normal
range of motion and that plaintiff stated during the hearing that
the last time she received any treatment was almost a year prior.[3]

_____

[3] There should be no question that an ALJ may consider physical examination
findings and type and frequency of treatment, among other factors, in evaluating

He elaborated that:  "While the [plaintiff] stated that [the lack of treatment] was because of her lack of insurance, the plaintiff has had access to medical care for other conditions, and, on at least on[e] occasion, the [plaintiff] has been informed of ways to get help with the cost of medical care."  (Tr. 30).

Plaintiff contends the ALJ's reasoning is insupportable because plaintiff explained that she did not have insurance and had recently moved to a new location (Wichita) where she had not established her medical care.  But, as the ALJ noted, plaintiff had access to care for other conditions in Wichita. Plaintiff visited a family medicine provider in Wichita on August 30, 2019 where she reported numerous ailments but also denied persistent joint or muscle pain.[4]  (Tr. 690).  Plaintiff also established a mental health provider in Wichita in August 2019 and this relationship continued in succeeding months.  (Tr. 707, 764, 766). Plaintiff had a diabetes checkup in Wichita on September 3, 2019. (Tr. 752).  She had a diabetic eye exam with a different office in Wichita on August 5, 2019.  (Tr. 716).  She also visited Via Christi Clinic, PA, Sleep Center in Wichita on September 24, 2019 for her sleep apnea.  (Tr. 757).  On this record, the court finds

---

subjective symptoms such as pain.  See Angelina B. v. Saul, 2019 WL 3318181 *3 (D.Kan. 7/24/2019)(quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)).
[4] The record of the visit states that plaintiff had moved back to the area and needed a referral to "derm, cardiologist and sleep . . . sees psychiatrist . . . Adderal was prescribed for fatigue and seems to help."  (Tr. 690).  Plaintiff also reported during the visit that she did not sit around all day; that she swept floors, played with kids and vacuumed.  She also said she tried to nap when she could due to exhaustion.  (Tr. 694).

it was not improper for the ALJ to consider plaintiff's lack of treatment in addition to her physical examination findings when evaluating her shoulder limitations.

Elsewhere in his opinion, the ALJ stated that the medical findings of two state agency consultants, Dr. Harry Cole and Dr. Javier Torres, were "largely persuasive" and consistent with the "general good results" of plaintiff's physical examinations (Tr. 31).  Dr. Torres, unlike Dr. Cole who listed no limitations, restricted plaintiff to occasional reaching.  The ALJ adopted some restrictions, but not to the extent of Dr. Torres "because while his opinion is consistent with the evidence regarding [plaintiff's] shoulder bursitis, it is inconsistent with the [plaintiff's] recent lack of medical care for that condition." (Tr. 32).

As the court has already noted, the law does not require the ALJ to fully adopt one of two conflicting medical opinions.  See Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016).  The court finds no error in the ALJ's decision to partially adopt the restrictions proposed by Dr. Torres in this instance.  The court concludes that the ALJ's consideration of plaintiff's shoulder ailment within the RFC findings is adequately supported by the physical examination findings, the reports of Drs. Torres and Cole,

and the relative lack of treatment.[5]   Accordingly, the court rejects plaintiff's contention that the physical RFC assessment was not supported by substantial evidence regarding reaching and handling limitations.

IV. Conclusion

For the above-stated reasons, the court rejects plaintiff's arguments to reverse and remand this action.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 5th day of February 2021, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge

---

[5] The limitations were presented as part of the RFC to the vocational expert who testified that there were jobs existing in significant numbers in the national economy which plaintiff could perform with the RFC.